MOUNT PLEASANT CEMETERY COMPANY, APPELLANT, v. MAYOR AND COMMON COUNCIL OF NEWARK, RESPONDENT.

Argued March 9, 1916—Decided June 19, 1916.

1. The supplement of 1861 (*Pamph. L., p.* 28) to the charter of the Mount Pleasant Cemetery Company does not amount to an irrepealable contract to exempt property from taxation.
2. The exemption of cemeteries from taxation by the Tax act of 1903 (*Comp. Stat., p.* 5083) does not include a tract of land belonging to a cemetery company acquired by a separate deed and lying between high-water mark and the dock line of a tidal river, separated from the other cemetery property by a railroad, when only a small portion of the tract has been filled in, and none is now used for interments or likely to be so used in the near future.

On appeal from the Supreme Court.

For the appellant, *Henry H. Dawson* and *Chandler W. Riker.*

For the respondent, *Harry Kalisch.*

The opinion of the court was delivered by

SWAYZE, J. The question is the liability to taxation of a tract of land belonging to the cemetery company, which lies between high-water mark of the Passaic river, where the tide ebbs and flows, and the dock line. The tract is separated from the cemetery property by the tracks of the Erie Railroad

Company. A small portion has been filled in and is being prepared for interments, though not divided into lots. No lots have been sold and there have been no burials on the tract. Most of the tract is more or less covered with water at high tide so that interments could not be made. The tract is accessible only by crossing the railroad tracks from the cemetery proper, or from lands of other owners to the south, or from an ungraded and unimproved public street to the north. Exemption is claimed both under the special charter of the cemetery company and under the General Tax act of 1903. We deal first with the charter. By that act (*Pamph. L.* 1844, *p.* 19, § 6) the premises, burial lots, vaults, monuments, and other fixtures of the cemetery were exempted from taxation unless otherwise directed by the board of chosen freeholders of Essex county. That board in 1891 ordered that the cemetery company should be thereafter subject to taxes. No question arises therefore under the charter as originally enacted. The claim to exemption is rested on the supplement enacted in 1861 (*Pamph. L., p.* 28), which is said to amount to an irrepealable contract for an exemption from taxation of the property, assets and effects of the cemetery company, derived from the sale of lots in the cemetery. The tract now in question was an investment in 1881 of proceeds of such sales. If this contention is correct, the cemetery corporation has had two distinct contracts for exemption, one by reason of the charter subject to the control of the board of freeholders including the original cemetery and additions thereto up to 1861; one by the supplement, irrepealable and including property purchased since 1861 with the proceeds of sales of lots. So unusual a situation arrests attention at once. An examination of the supplement to the charter shows that the contention is untenable. The preamble begins by reciting the provision for exemption in the charter, and then proceeds: "And whereas, the said cemetery company are endeavoring to create a fund from the surplus proceeds of the sale of the lots of said cemetery, to provide means to preserve and maintain its enclosures and buildings and to pay the expenses of a proper care of the same; and whereas, doubts have

arisen whether by said act such surplus proceeds are exempt from taxes and assessments—therefore, to remove such doubts" it is enacted that the property of the company derived from the sale of lots, is exempted from all taxes and assessments, and the said surplus proceeds shall be held and used for the purposes mentioned. We think it clear that the object of the act was as the preamble declares it to be, merely to remove the doubts that had arisen as to whether the surplus proceeds of sales were exempt, and to place them on the same footing as the original property under the charter of 1844. This construction remedies the then existing difficulty in accordance with the declared purpose of the supplement and avoids the undesirable result of an irrepealable contract. That could not have been in the mind of the legislature at the stage which the discussion of such matters had reached after the enactment of the act of 1846 authorizing the legislature to alter, suspend and repeal charters. *Comp. Stat., p.* 1600, § 4. If, however, the construction contended for were permissible, the act of 1861 would not amount to an irrepealable contract. It would lack the essential element of a consideration. There is no detriment to the cemetery company, and no benefit to the state. The supplement merely extends the privilege of exemption to a part of the company's property as to which doubt, but apparently no controversy, had existed. The case in that respect is governed by *Hanover* v. *Camp Meeting Association,* 76 *N. J. L.* 65; affirmed, 76 *Id.* 827.

The Tax act of 1903 (*Comp. Stat., p.* 5083) exempts from taxation graveyards not exceeding ten acres of ground, cemeteries and buildings for cemetery use erected thereon. Whether the tract now in question can be included under the word "cemeteries" is a question of definition. We have reached the conclusion that it cannot. The decisive considerations with us are—(1) That a tract the greater portion of which is still subject to the ebb and flow of the tide, only a small portion of which has been in fact reclaimed, none of which is now used for interments or likely to be so used in the near future, can only be called a cemetery by a figure of speech as the sea was called the cemetery of the Chateau d'If, or the ocean is

often called a watery grave. We must interpret the language of statutes literally according to the ordinary meaning of words, not according to a meaning permitted only by poetic license; (2) The tract was acquired by a separate deed long after the rest of the cemetery property was acquired. It evidently is not necessary for cemetery purposes, however desirable it may be for the appellant to own it; (3) It is separated from the rest of the appellant's property by the Erie railroad tracks and is inaccessible for any practical purpose otherwise than by crossing these tracks. It is as distinct from what would ordinarily be called the cemetery, in physical location, as it is in character, as land covered with water is distinct in character from dry land. The importance of the separation of the cemetery company's property by the railroad seems to us as great in the present case as it was in a condemnation case where the owner's land was severed by the Morris canal. *Bergen Neck Railway Co.* v. *Point Breeze Ferry Co.*, 57 *N. J. L.* 163. We do not doubt that it may be desirable for the appellant to control this land under water in order to prevent possible nuisance in the future. So it might be important for the same purpose to control the land across the street from its main entrance. The appellant might think it desirable to tear down the buildings and prepare the land for possible use for interments in the more or less distant future, but we cannot believe it could thus withdraw the land from the tax levy. The line to be drawn is not a hard and fast line, but like so many other legal questions, one of reasonable definition under all the circumstances of the case. We think the tax was properly imposed and the judgment is therefore affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, BERGEN, MINTURN, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 11.

*For reversal*—None.